UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ITALO T. SANDERS,

        Petitioner,

   v.                                   Case No. 21-C-563

UNITED STATES OF AMERICA,

        Respondent.

## DECISION AND ORDER DENYING MOTION TO VACATE SENTENCE

On December 20, 2019, Italo T. Sanders pleaded guilty to possession with intent to deliver MDMA, commonly referred to as Ecstasy, in violation of 21 U.S.C. §§ 841 and 846 (Count One), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two), Case No. 19-CR-152. On May 6, 2020, the Court imposed a substantially-below guideline sentence of two days on Count One and the mandatory minimum consecutive term of 60 months on Count Two. On May 3, 2021, Sanders filed a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court screened the motion and allowed Sanders to proceed on two ineffective assistance of counsel claims, one involving his counsel's failure to advise him of the law regarding the § 924(c) charge, and the other involving his counsel's failure to consult with him concerning possible grounds to appeal. Dkt. No. 3 at 4. The Government responded to the motion, Sanders replied, and the motion is now before the Court. For the following reasons, Sanders' motion to vacate his sentence will be denied.

## BACKGROUND

On August 27, 2019, Sanders was indicted on charges of possession with intent to distribute MDMA and possession of a firearm in furtherance of a drug trafficking crime. Case No. 19-CR-152, Dkt. No. 9. The plea agreement set forth a summary of the evidence the Government intended to present if the case had proceeded to trial. According to the summary, Sanders' charges stemmed from an investigation into a package that contained approximately 2,418 tablets of MDMA. Case No. 19-CR-152, Dkt. No. 34, ¶ 5. Law enforcement removed most of the MDMA and delivered the package with the remainder to the address shown on it, where Sanders signed for the package and took it inside and opened it. A short time later, Sanders and Antonio Johnson were observed leaving the apartment, with Johnson carrying the package. Sanders was arrested in the parking lot, and Johnson dropped the package and fled. *Id.* Law enforcement then executed a search warrant on Sanders' residence. In the master bedroom, law enforcement located a prescription bottle with Sanders' name on it and three safes. The first safe contained approximately 119 grams of MDMA, the second contained a Jimenez Arms 9mm handgun and ammunition, and the third contained $2,300 and the keys for the first safe. *Id.* The keys for the second and third safes were found on Sanders at the time of his arrest. Following his arrest, Johnson stated he was visiting Sanders from Chicago. Johnson admitted that he sold MDMA pills in Chicago but not in Green Bay where Sanders sold it. Following the summary of evidence are the statements: "Sanders agrees that he possessed MDMA with the intention of delivering it to others. Further, Sanders agrees that he possessed the firearms in furtherance of the distribution of controlled substances found at his residence." *Id.*

At his change of plea hearing, Sanders acknowledged that he read, signed, and had an opportunity to discuss the plea agreement with his counsel. Case No. 19-CR-152, Dkt. No. 71 at

2

7. Sanders also affirmed that he had no questions about the elements that the Government would be required to prove with respect to the § 924(c) charge. *Id.* at 9. When asked for his plea on Count Two, Sanders stated "guilty," but the Court observed Sanders hesitate and asked if he was worried about the plea. *Id.* at 16. Sanders replied that he was but that he understood the elements of the charge. *Id.* The Court took a brief recess to allow Sanders and his counsel to discuss the hesitation, but upon resuming, Sanders still wished to plead guilty. *Id.* at 17. Sanders also stated he had no objection to the Court's reliance on the Government's summary of evidence as a factual basis for the purpose of accepting his plea. *Id.* at 18.

Sanders was sentenced on May 6, 2020. Case No. 19-CR-152, Dkt. No. 72. Sanders' counsel indicated that there was no objection to the factual statements laid out in the report, and Sanders apologized to the Court for "making poor decisions" and took responsibility for his actions. *Id.* at 4, 10. After hearing from Sanders, the Court inquired as to how he came to possess the guns and whether he owned them. *Id.* at 12. Sanders replied that the guns were not his but that the key to the safe that contained the guns was found on him. *Id.* The Government acknowledged that Sanders may not have been the owner of the firearms but asserted that he exercised dominion or control over them, and that the circumstances were sufficient to fit the legal requirements for the § 924(c) charge. *Id.* at 13. The Court then imposed a "minimum" sentence, sentencing Sanders to two days in custody on Count One and the mandatory minimum sentence of sixty months on Count Two. *Id.* at 16.

## ANALYSIS

### A. Failure to Investigate

Because the Court dismissed grounds one through three of Sanders' motion on screening, only his fourth and fifth grounds are relevant here. Sanders' fourth ground for relief asserts that

his counsel provided him with ineffective assistance by "failing to object to an insufficient factual basis" as to Count Two of the indictment. Dkt. No. 1 at 11–12. On screening, however, the Court concluded that the factual basis identified at the plea hearing was sufficient and instead construed the fourth ground as alleging that Sanders' counsel failed to properly advise him of the law as it concerned the § 924(c) charge. Dkt. No. 3 at 4. This interpretation better aligned with the affidavit of Sanders' counsel, Attorney Heather L. Richmond, in which she states that she "did not properly investigate the law pertaining to the relevant factors of the possession of a firearm in furtherance of a drug trafficking crime and did not therefore properly advise [Sanders] with his options moving forward . . . as to plea or proceed to trial." Dkt. No. 1-1 at 8. Sanders argues that this failure violated his Sixth Amendment right to counsel.

Under the familiar standard of *Strickland v. Washington*, 466 U.S. 668 (1984), Sanders must establish two elements to demonstrate that his counsel performed ineffectively. First, he must demonstrate that his counsel's performance was "deficient." *Id.* at 687. This requires "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Id.* In making such a determination, the Court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. Second, Sanders must establish that the deficient performance "prejudiced the defense." *Id.* at 687. Where, as here, a petitioner seeks to challenge a guilty plea based on ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Sanders argues that his counsel performed deficiently by failing to properly advise him of the law prior to pleading guilty. Dkt. No. 6 at 3. He cites to *Smith v. United States*, in which the

Sixth Circuit noted that a "criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." 348 F.3d 545, 553 (6th Cir. 2003). Even if the Court were to consider Sanders' counsel's performance deficient, however, Sanders cannot establish prejudice.

In order to demonstrate ineffective assistance of counsel that led to the entering of a guilty plea, Sanders "must establish through *objective evidence* a reasonable probability that," but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996) (emphasis added). Sanders has offered no objective evidence. He fails to identify specifically what his misunderstanding was or what he later learned about the elements of the crime that now cause him to question his decision to plead guilty. Instead, he merely offers the self-serving and unsupported statement that he "would not have plead guilty" and would have "insisted on going to trial." Dkt. No. 1-1 at ¶ 9. Such self-serving testimony is insufficient to establish prejudice at this stage. *See McCleese*, 75 F.3d at 1179. This is especially true here, because Sanders has not made any factual assertions contrary to those he made during his plea colloquy or sentencing. Although he briefly contends that he "never truly understood the nature of the charge to which he pleaded guilty as to Count Two," Dkt. No. 2 at 20, he fails to say what he was confused about or did not understand. He does not contradict the fact that he (1) acknowledged that he read, signed, and had an opportunity to discuss the plea agreement with his counsel; (2) agreed to the factual basis in the plea agreement and did not object to the facts laid out in the presentencing report; and (3) apologized to the Court for making poor decisions and took responsibility for his actions. In short, Sanders has never

5

disputed the facts that led to his arrest and conviction.  Why Sanders would choose to reject a plea agreement and proceed to trial, then, is unclear.  Sanders' failure to provide objective evidence in the form of an explanation for *why* he would have insisted on proceeding to trial had his counsel better informed him, at a bare minimum, dooms his ability to demonstrate prejudice.

This is compounded by the fact that Attorney Richmond's affidavit does not explain what research she would have done or how that research would have changed the result.  Although she asserts that she did not "properly investigate the law" with respect to the § 924(c) charge, Dkt. No. 1-1 at 8, she does not explain how additional research would have impacted her counseling of Sanders with respect to his plea.  Instead, the Court is left to speculate what Attorney Richmond may have found, how her counseling of Sanders may have differed, and whether any of this may have impacted Sanders' decision to enter his plea.  Such speculation by the Court does not rise to the level of "objective evidence" that Sanders is required to provide to establish prejudice. *McCleese*, 75 F.3d at 1179.  Therefore, Sanders is not entitled to relief on this ground.

**B.  Failure to Appeal**

Sanders' fifth ground for relief alleges that his counsel provided ineffective assistance by failing to advise him of his right to file a notice of appeal.  Dkt. No. 1 at 14.  Attorney Richmond's affidavit indicates that, following sentencing, she "did not advise Sanders to appeal the sentence imposed" and did not "advise Sanders of his right to appeal."  Dkt. No. 1-1 at 8.  Importantly, Sanders does not assert that he was unaware of his right to appeal, and correctly so.  This is because the Court advised Sanders of that right during his sentencing:

> The Court: Mr. Sanders, you have the right to appeal your conviction or your sentence, and your attorney will talk to you about possible grounds to appeal.  If you cannot afford the costs of an appeal, the clerk will assist you so you can file in forma pauperis and not have to pay those costs.  If you choose to appeal though, you have to file a notice of appeal within 14 days of the entry of the judgment.  If you fail to

> file a timely notice of appeal, you would lose that right. Do you understand those things?
>
> Sanders: Yes.

Case No. 19-CR-152, Dkt. No. 72 at 23. Nonetheless, Sanders asserts that his counsel's failure to advise him of this right constituted ineffective assistance of counsel.

While the Supreme Court has "long held that a lawyer who disregards specific instructions from [a] defendant to file a notice of appeal acts in a manner that is professionally unreasonable," that is not what happened here. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Instead, in this situation, Attorney Richmond only had a constitutionally imposed duty to consult with Sanders about an appeal if there was "reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* at 480.

In deciding whether these conditions are met, the Court must "take into account all the information counsel knew or should have known." *Id.* One "highly relevant factor" is whether the conviction followed a guilty plea, "both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* And where the defendant pleads guilty, the Court must consider "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Sanders has not alleged facts that suggest either prerequisite to establishing deficient performance is present. There is no indication that a rational defendant would want to appeal the sentence Sanders received. Sanders certainly received "the sentence bargained for as part of the plea," *id.*, because he was given a sentence that the Court considered minimal; two days on Count One and the mandatory minimum of sixty months on Count Two. Case No. 19-CR-152, Dkt. No.

7

72 at 16. Sanders has also failed to identify any "nonfrivolous grounds for appeal," such that a rational defendant would want to appeal. *Roe*, 528 U.S. at 480. Attorney Richmond's affidavit does not indicate that she believed Sanders had any nonfrivolous grounds for appeal or that she would have advised him to appeal had they discussed potential grounds. Instead, it merely states that she did not advise him to appeal the sentence or that he had a right to appeal the sentence. Dkt. No. 1-1 at 8. He has failed to allege, however, that her failure to advise him to appeal amounted to deficient performance, and the record makes clear that the Court advised him of his right to appeal. In other words, he has failed to allege facts sufficient to show deficient performance.

Sanders has also failed to show that he "reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. Although he asserts in his reply brief that he "demonstrated an interest in appealing," Dkt. No. 6 at 6, he does not explain what he did to demonstrate this interest to his counsel. His attorney's affidavit does not indicate that Sanders ever demonstrated an interest in appealing; instead, it merely states that she did not advise him to appeal or advise him of his right to appeal. Dkt. No. 1-1 at 7–8. Sanders cannot rely on an uncommunicated desire to appeal to accuse his attorney of ineffective assistance of counsel for her failure to file an appeal on his behalf. Therefore, Sanders is not entitled to relief on the fifth ground of his petition.

## CONCLUSION

For the foregoing reasons, Sanders' motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 1) is **DENIED.** No evidentiary hearing is necessary since it is clear from the petition that Sanders is not entitled to relief. The Clerk is therefore directed to enter judgment dismissing the case. A certificate of appealability will be **DENIED**. I do not

believe that reasonable jurists would find that Sanders has made a substantial showing of the denial of a constitutional right. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Sanders is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within 60 days of the entry of judgment. *See* Fed. R. App. P. 3, 4. In the event Sanders decides to appeal, he should also request that the court of appeals issue a certificate of appealability.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of April, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge